14-1807, Lenjinac v. Holder, and Mr. Dressel. Still morning. Good morning. Morning, Your Honor. Good morning. Just barely, yes. May it please the Court, for the record, Christopher Dressel on behalf of the petitioner and Mayor Lenjinac. The correct legal standard and produced a reasoned analysis of the evidence in the record in light of that standard. The BIA failed to do so in Mr. Lenjinac's case. Although the record evidence indicates that Mr. Lenjinac is likely to be detained if removed to Bosnia-Herzegovina, and that numerous instances of torture have been reported in Bosnian prisons and detention centers, the Board categorically dismissed this evidence because it believed that the Bosnian authorities would imprison him for the specific purpose of imposing torture upon him, or that he would, as the government phrases it, be singled out for torture. Well, here's what I've been wondering. Did he assert that he's at greater risk for torture in Bosnia because he's being returned after committing a serious crime in the United States, or simply by virtue of the fact that he'll be imprisoned in Bosnia? In other words, is there evidence in the record that a Bosnian prisoner imprisoned after committing a crime in the United States faces a greater risk of torture than a Bosnian prisoner generally? I think it's the latter, your argument. His testimony, which was accepted by the immigration judge, was that by having committed a serious crime in the United States, that makes him at a greater risk of being detained or imprisoned once returned to Bosnia, but I do not believe he specifically testified that having committed the crime once he's in prison will place him at a greater risk of torture in prison than the Bosnian prison population as a whole. Nonetheless, there is evidence in the record of what the immigration judge called numerous instances of torture in Bosnian prisons. This includes beatings with baseball bats, electrical shocks, guns being thrust in prisoners' mouths, and threats that they will be shot and dumped in a river. And the board categorically dismissed the relevance of that evidence because it imposed a legal standard that is not supported by the case law. Specifically, it either assumed that the authorities responsible for ordering a prison guards will torture him, or that the prisoner will somehow be singled out for torture. But neither of those statements finds any support in the case law, or indeed the regulations, which specifically direct the immigration court to consider country-conditioned evidence. This court's decision in E2 Leon v. Ashcroft clearly establishes that general country-conditioned evidence showing torture in prisons may, in an appropriate case, be on its own sufficient evidence to support an applicant's burden of proof under the Convention Against Torture. In that case, the court did acknowledge that translating general country-conditioned evidence into a probability of torture applicable to a particular CAT applicant is difficult and does present problems. But it made clear that those problems are factual problems in nature, and thus the immigration court, or the Board of Immigration Appeals, is responsible for the evidence. It cannot simply dismiss the evidence on the ground that it is legally irrelevant, as the Board did here. Is there a legal reason that he will be in prison when he returns? It's not clear from the record that there's a specific law in Bosnia that will require him to be in prison, but he did testify that he believes that having committed a serious crime in Bosnia will make it likely that he will be detained or imprisoned once returned to Bosnia. And that's compounded by the fact that he has also testified that he's not sure what part of the country he could even return to. And the crucial fact, Your Honor, is that that fact is not challenged. The immigration court made a finding to that effect. The Board of Immigration Appeals. The fact that he will likely be detained if returned to Bosnia. So that's the fact that's in the record. It's not disputed by the government in this case. The only question here is the evidence of torture of Bosnian prisoners. It appears that the reason that the Board of Immigration Appeals imposed a burden of proof that's higher than the applicable case law and regulations permit is because it misread the Third Circuit's decision in Pierre v. Attorney General of the United States. That was the case that concerned deplorable prison conditions in Haiti. And the petitioner was arguing that being returned to Haiti and being subjected to those conditions, which included inadequate cooling for medical care, infestations with rodents, conditions of that nature, was tantamount to torture. And the Third Circuit correctly noted that poor prison conditions of that nature are only torture if the magistrates or civil authorities who are responsible for making detention considerations imprison an individual specifically so that that individual will be subjected to those prison conditions. But in the Roy case, the Third Circuit clarified that the same does not hold true if prison guards themselves are like or will impose treatment that inherently constitutes torture, such as severe beatings, etc. At that point the intent of the prison guards themselves is sufficient to satisfy Katz's specific intent standard. And the Board of Immigration Appeals in this case cited Pierre but completely overlooked the Roy decision and as a result ended up imposing a burden of proof that is inapplicable in this case. And what this court has said in numerous cases, including Kaye v. Ashcroft and the Kolovetsky opinion, is that when the board does not apply the correct legal standard, this decision must be vacated so that the board can assess the facts in the record in light of the correct legal standard. And that's the result that should be obtained here. The board should not be allowed to simply wave its hands and make a brief one-sentence note of the evidence in the record and dismiss it as irrelevant without considering it in a reasoned fashion measured against the prevailing legal standard. As the board remarked, as this court remarked in Mansour, when the board conducts a quote minimalistic and non-detailed consideration of the record evidence, then that's insufficient and it's not a sufficient analysis to sustain the board's decision. That's the case here and that's the reason that the board's decision must be vacated. And I'll reserve the balance of my time for Mr. Hayes. Good morning. May it please the court, Timothy Hayes on behalf of the Attorney General. Because petitioner is removable by reason of having committed a covered criminal offense, the court's jurisdiction is limited to review of coverable constitutional legal questions. Petitioner has raised just one in his opening brief, and it was just alluded to earlier, whether the agency applied the correct legal standard in adjudicating his request for protection under the Convention Against Torture. The agency's holding, the board's holding here, that petitioner quote has not established that anyone in Bosnia retains an interest in harming him or will torture him upon his return or that authorities will imprison him in order to cause him severe pain or suffering represents a correct application of the specific intent standard to the facts of this case. The court should accordingly deny the petition for review. Unless the court wants to hear about our jurisdiction arguments, I'll skip them. No. They're in the brief, but. Yeah, they're well done in the brief. I mean all that. I'll go right to the specific attempt then. Did the BIA accept the IJ's factual finding that he was likely to be a conspicuous target given that he had no family left in Bosnia-Herzegovina? I think you would have to say yes. I think you would have to say the board accepted all the IJ's factual findings and the analysis. So why do you think this finding falls short of demonstrating that he would be singled out for torture? Because, oh I'm sorry. Yeah I'm sorry and you know. I don't mean to go over you. No, it's okay. She didn't, no thank you. She didn't link it to prison conditions. I mean my understanding of his claim is I am likely to be in prison because I'll be returned as a criminal detainee in the United States although detaining me immediately upon Bosnia. While the immigration judge accepted that he'd like to be tortured, she didn't say that he would be singled out in prison for any reason. And that's just what your honor got to do earlier. That's a specific problem in this case. If you look at 8 CFR 1208.18A, it defines torture. And the specific attempt standard that courts have interpreted from that regulatory definition has two components. One is a volitional component. So the officer, the prison officer, or perhaps a government official outside of the prison has to attend to cause him pain and suffering. That has to be met. The act has to be met. The second component is it has to be for a prescribed purpose. Now the regulation gives some examples. Obtaining information or a confession from him or a third person. Punishing him for an act committed or suspected of having committed. Intimidation or coercion or any reason based on a discrimination of any kind. That is a missing factual link in this case. And that is what the board pointed out that the immigration judge did not do in which he granted cat protection. There is nothing to suggest that he would be in there. All the other cat cases, the Haitian cases, the Jamaican cases, there's usually something there. Usually the alien is mentally ill or he has some sort of condition that would cause him to act out. And there's evidence in the record that suggests prison officials in those countries are afraid or would single those people out for excessive punishment because they're scared of them. What exactly are you arguing is missing from his claim? If he's able to show that prisoners in Bosnia generally are targeted, you know, for persecution simply because they're prisoners, what more does he need to show? It has to be for a prescribed purpose, Your Honor. It can't just be that prisoners generally are targeted. There has to be a reason behind the prisoners being targeted. In this case, the country condition reports actually suggest that conditions are improving in Bosnian prisons. It's not that torture is widespread, but there is still torture there. There has to be something more than just being a prisoner. It's undisputed that he's established he'll likely be in prison if he's returned. Yes, Your Honor. So if he's able to point to evidence that his treatment in prison is likely to amount to torture, would that be enough for deferral for removal? Well, the definition of torture includes the prescribed purpose I was just describing. So we'd have to say, in addition to being a severe pain and it has to be for a prescribed purpose. So you'd have to link it. For example, Your Honor, if the State Department country report suggested that criminal deportees in the United States are being tortured in the prison, I think, I can't say for certain, but I think that would be sufficient. But that's not what the evidence says. It says that there's still some lingering incidents of torture in the prisons. It doesn't say that specific persons are targeted for it that would fit his qualifications. I know he's Bosnian Muslim. I know he survived the, well, his family survived the massacre, the Yugoslavian disintegration. So I'm well aware of the sympathies in this case, Your Honor. It's not a great case, but it doesn't meet the legal definition of torture. Well, you mentioned some countries that apparently it's a given, if we go back to those countries, even, that you may be able to be held for removal based on the cap. If you go to prison, then it's automatically a bad place. Well, I'm not aware of any that are quite that broad. But if you have a mental illness, the thing about Haiti that's changing is what Haiti did is Haiti had... There was a law in the books that Haiti had that said any criminal deportee from the United States would automatically be imprisoned. Now, Bosnia, to my knowledge, does not have this law, but we're accepting that in this case because the IJ made that finding. But that's what made the Haitian cases sort of different. But even in those cases, it was more than they would be imprisoned. The people that were awarded cap protection were mentally ill. And in Haiti, in particular, the prison guards were very harsh with mental ill inmates. And that was what... For the Jean Pierre case in the Third Circuit, for example, that was a reversal there. So would you know when there's a precedent here that you can't send them back to Bosnia? Bosnia's not a great place. No, but I mean, that's... They're gonna be put in prison. Right. I'm comfortable... I mean, I'm comfortable saying I don't think there's a precedent, but it's just great, so. Unless Your Honors have anything further. Thank you very much. Thank you very much, Your Honors. Mr. Dressen. Oh, boy. Thank you, Your Honor. I'd like to address the prescribed purpose argument that my opposing counsel made, and I'd like to make several points about that. First, that was not the basis of the Board of Immigration Appeals decision. The Board of Immigration Appeals decision, although it's somewhat ambiguous, appears to rest primarily on the misunderstanding as to whether the intent of the civil authorities or the criminal authorities who order his imprisonment is necessary to establish that he has met the specific intent standard under CAD. And that's evident from the court's... From the Board of Immigration Appeals citation to the Pierre case. Secondly, I would contend that the torture or the infliction of severe pain against prisoners is on account of punishment. In other words, the fact that they've been placed into prison. And so that, in itself, establishes that the prescribed purpose standard has been met. But it's important to note that that... You will not find the phrase Board of Immigration Appeals decision. That is not the basis on which they relied. Instead, they relied on an erroneous view of what mens rea, in effect, is required on the part of the authorities who are responsible for making determinations as to who will be imprisoned in Bosnia. And again, the evidence, which is undisputed, is that he will be imprisoned in Bosnia. And what the Board of Immigration Appeals wrongly said is that we have to assess the mental state of the individuals and the authorities in Bosnia who are going to make that decision. That's simply wrong. It's not supported by the law, either in this circuit or in the Third Circuit, which is the circuit on whose case law the Board of Immigration Appeals has relied. I see that my time has expired. I thank the court. Thank you very much. Were you appointed? I was, of course. So do you. But thank you, really. It was about... You were both terrific. Thank you. I love my lawyers. Alright.